Filed 5/30/25  P. v. Rosales CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JIMMY ANNTONIO ROSALES,<br><br>    Defendant and Appellant. | A167850<br><br>(Solano County<br>Super. Ct. No. VCR235061) |

This is an appeal from a jury conviction finding defendant Jimmy Rosales guilty of second degree murder (Pen. Code, § 187, subd. (a)) and finding true a firearm enhancement under Penal Code section 12022.53, subdivision (d).  Defendant's main claims on appeal are:  (1) the trial court erred by denying his objections to the prosecutor's peremptory challenges of two prospective jurors under Code of Civil Procedure[1] section 231.7; (2) the trial court erred by failing to sua sponte instruct the jury to consider his age at the time of the crime (22) when considering whether he committed murder or voluntary manslaughter; and (3) his trial counsel provided prejudicial ineffective assistance of counsel by failing to request a jury instruction on

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

1

defendant's youth. We order that errors in the abstract of judgment be corrected, but we otherwise affirm the judgment.

## BACKGROUND

On September 23, 2019, the victim was shot and killed outside a 7-Eleven.[2] The victim and defendant encountered each other in the store prior to the shooting. A surveillance video from the 7-Eleven showed that defendant purchased items prior to the shooting, and police obtained information from the credit card he used, which belonged to defendant's girlfriend. Police conducted surveillance on defendant's girlfriend's home, saw defendant there, and then identified defendant by reviewing the 7-Eleven surveillance video.

After initially denying any involvement during a police interrogation, defendant admitted shooting the victim but said he did so because the victim threatened him by telling defendant to leave him alone while the victim reached for his waist.

At the time of the shooting, defendant lived with his girlfriend. In her police interview, she denied knowing anything about the shooting. When police showed up at her home at 2:00 a.m. the day after her interview and told her that defendant had admitted to shooting the victim, she told police that defendant told her he had shot someone. At trial, she testified that she lied to police when they came to her home, and defendant never told her that he shot the victim.

There were numerous witnesses at the 7-Eleven the night of the shooting, but none identified defendant as the shooter. One witness testified

---

[2] We provide only a brief summary of the evidence presented at trial because a more detailed summary is not required to resolve the issues in this appeal.

2

that he saw the victim raising his shirt and jumping up and down like he wanted to fight right before the shooting, but that witness did not directly see the shooting.

At trial, defendant's main defense — which he supported by the testimony of an expert on false confessions — was that the police wore him down with their interrogation, they fed him the story about self-defense to get him to confess, and he falsely confessed.

## DISCUSSION

We first address defendant's claims of error with respect to section 231.7 and then turn to the alleged errors relating to the jury instructions.

### I.   Section 231.7

"Before January 1, 2022, trial courts examined peremptory challenges under the three-step inquiry established by *Batson v. Kentucky* (1986) 476 U.S. 79, and *People v. Wheeler* (1978) 22 Cal.3d 258.  Recognizing the limitations of the *Batson/Wheeler* inquiry, the Legislature enacted Assembly Bill No. 3070 (2019–2020 Reg. Sess.) to add . . . section 231.7, which creates new procedures for identifying unlawful discrimination in the use of peremptory challenges."  (*People v. Jaime* (2023) 91 Cal.App.5th 941, 943, fn. omitted (*Jaime*).)

Section 231.7, subdivision (a) provides:  "A party shall not use a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups."

A party or the trial court may object to the use of a peremptory challenge on the grounds that it violates section 231.7, subdivision (a), and the challenging party must then state the reasons for exercising the

3

challenge. (§ 231.7, subds. (b), (c).) The court evaluates only those stated reasons "in light of the totality of the circumstances," without speculating on or assuming the existence of other possible justifications. (*Id*., subd. (d)(1).) "If the court determines there is a substantial likelihood that an objectively reasonable person would view [actual or perceived cognizable group membership] as a factor in the use of the peremptory challenge, then the objection shall be sustained. The court need not find purposeful discrimination to sustain the objection." (*Ibid*.) "[A]n objectively reasonable person is aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in California." (*Id*., subd. (d)(2)(A).) A " 'substantial likelihood' means more than a mere possibility but less than a standard of more likely than not." (*Id*., subd. (d)(2)(B).) Section 231.7, subdivision (d)(3) provides a non-exhaustive list of circumstances the court may consider in making its determination under subdivision (d)(1).

Section 231.7, subdivisions (e) and (g) provide separate lists of presumptively invalid reasons for exercising a peremptory challenge, and each "sets out a distinct process by which a court determines whether a presumptively invalid reason can be absolved of that presumption." (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 793 (*Ortiz*).)

As is relevant here, a peremptory challenge for "expressing a distrust of or having a negative experience with law enforcement or the criminal legal system" is presumed to be invalid unless the party exercising the challenge "can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that

4

the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (§ 231.7, subd. (e)(1).) "For purposes of subdivision (e), the term 'clear and convincing' refers to the degree of certainty the factfinder must have in determining whether the reasons given for the exercise of a peremptory challenge are unrelated to the prospective juror's cognizable group membership, bearing in mind conscious and unconscious bias. To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (§ 231.7, subd. (f).)

Section 231.7, subdivision (g) identifies "presumptively invalid" reasons for peremptory challenges that have been historically associated with improper discrimination in jury selection: "(A) The prospective juror was inattentive, or staring or failing to make eye contact. [¶] (B) The prospective juror exhibited either a lack of rapport or problematic attitude, body language, or demeanor. [¶] (C) The prospective juror provided unintelligent or confused answers." (§ 231.7, subd. (g)(1).) Section 231.7, subdivision (g)(2) prescribes the circumstances under which these presumptively invalid reasons "can be absolved of that presumption." (*Ortiz*, *supra*, 96 Cal.App.5th at p. 793.) The trial court must confirm the "asserted behavior occurred." (§ 231.7, subd. (g)(2).) "Even with that confirmation, the counsel offering the reason shall explain why the asserted demeanor, behavior, or manner in which the prospective juror answered questions matters to the case to be tried." (*Ibid.*; *Ortiz*, at p. 794 [§ 231.7, subd. (g)(2) contains " 'confirmation' " and " 'explanation' " requirements].)

5

The trial court has discretion to select or fashion a remedy for an improper peremptory challenge before trial has begun, but the court shall quash the jury venire and start jury selection anew if the objecting party requests that remedy. (§ 231.7, subd. (h)(1), (3)–(5).) If the court sustains an objection to an improper peremptory challenge after the jury is impaneled, it may declare a mistrial and select a new jury if the defendant requests that remedy. (*Id.*, subd. (h)(2).)

"The denial of an objection made under this section shall be reviewed by the appellate court de novo, with the trial court's express factual findings reviewed for substantial evidence. The appellate court shall not impute to the trial court any findings, including findings of a prospective juror's demeanor, that the trial court did not expressly state on the record. The reviewing court shall consider only reasons actually given under subdivision (c) and shall not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis argument in the trial court. Should the appellate court determine that the objection was erroneously denied, that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (§ 231.7, subd. (j).)

## A.  *The Challenge to Prospective Juror Z.P.*

### 1. Additional Background

Z.P. identified herself as Hispanic in her juror questionnaire.

When the court began the second day of voir dire, the prosecutor stated outside the presence of the prospective jurors, "I don't know if the Court and counsel noticed, but yesterday [Z.P.] was texting on her phone several times

6

while the Court was doing its voir dire." "She would pull her phone out of her purse and text and put it back in." The prosecutor said she wanted to make a record, and stated that Z.P. had pulled out her phone to text at least twice.

The court responded that it had not noticed Z.P. texting, but it would "start out this morning on that point." The court commenced proceedings with the prospective jurors that day by instructing them regarding electronic devices. "And there's a couple things: One, that we ask you to not use electronic devices during the course of your service as a juror. Couple things: One, it tends to distract you; two, there are actual rules against recording items in a courtroom." The court explained, "Now, people have their phones and you can't tell what they are doing, things like that. [¶] So the bailiffs, if they are asking you to put your phone away, that's — they are trying to make sure that you are complying with these rules of court which do not allow any sort of recording of any matter in the courtroom."

During voir dire, the prosecutor asked Z.P. to confirm that she knew that sitting on the jury meant that "we're asking you to sit with us for a while" and "listen [to] and evaluate all the evidence you hear in this courtroom." Z.P. said she understood. Z.P. said she could keep an open mind, evaluate the evidence, deliberate if called upon to do so, and return a guilty verdict if the prosecutor proved her case beyond a reasonable doubt.

After voir dire of the initial panel of prospective jurors, the parties exercised peremptory challenges. The defense excused two jurors and the prosecutor excused one, but not Z.P. New jurors were added to the panel, including J.G. After voir dire of the new panel and a brief recess, the prosecutor exercised a peremptory challenge on Z.P. Defense counsel objected and the parties and the court had a sidebar discussion. After the sidebar, the court excused Z.P.

The court addressed defendant's objection at a subsequent break in the proceedings after the jury was sworn. The court said, "We had a discussion at sidebar, and I was trying to keep us moving here, in terms of a couple of [the] People's peremptories, so let's go through those. I made some notes. [¶] I told them that I would go ahead and excuse them because I was pretty confident there was a significant basis — substantial factual basis to excuse them. First, [Z.P.]"

The prosecutor explained, "As I noted this morning, yesterday she appeared to, more than once, be distracted by her phone when the Court was speaking with her. The second we took a break, she took her phone out. She appears to just be [distracted]. There is something clearly going on in her life that is distracting her from being present. And I just felt like that was a basis. Apparently, she has an appointment this afternoon that she is concerned about, according to what she told the bailiff. So that's the reason. I just felt like she couldn't — she couldn't pay attention in the trial."

Defense counsel responded that she made an "AB 3070 challenge" at the sidebar before the court excused Z.P., and, under section 231.7, subdivision (g)(1), "behavior of a juror being inattentive or things like that are presumptively invalid reasons which can only be overcome if the Court confirms that it saw the behavior or I, as the objecting party, confirms [*sic*] that I saw the behavior, which I did not." The court asked, "You didn't see all the phone — cell phone stuff?" Defense counsel confirmed she had not and stated for the record that defendant and Z.P. were Hispanic.

The court then stated that it had not seen Z.P. on her phone the day before, but the court observed that "[Z.P.] was doing it first thing out the gate this morning and in the middle of my discussion until I asked them to put away the phone and then she did, in sort of an odd way. And so I did see

8

that.  And my bailiff was advised — my bailiff was advised she was indicating she could not stay here today because she had some sort of scheduling conflict, so yeah.  [¶]  Just as I — at the end there, the gentleman I excused was commenting on the faith he has — that he gives me in our youth, I thought [Z.P.] was just the opposite.  I thought she was displaying what you see with young folks these days is a contempt — a little harsh — but disregard for these norms that might interfere with their social media needs.  [¶]  And so I — I — to be honest with you, I thought about excusing her for cause even before you made the request because she was obviously going to be a challenge.”

The court concluded, “And so I don't find anything — the conduct was corroborated.  And I don't see anything inappropriate.  I think that was an appropriate concern.  [¶]  And I should indicate as to the nature of the jury makeup, sort of extraordinary, but by my count, six of the twelve seated jurors are Hispanic; three others are persons of color . . . only three white . . . only one white male.  So in terms of overall balance, it's actually a bit of statistical anomaly in favoring representation by the Hispanic community.  [¶]  So I don't have those concerns as well.”

At the sentencing hearing, the court denied defendant's motion for a new trial based on the asserted violation of section 231.7.  Regarding Z.P., the court stated, “I do recall specifically, and I didn't go back to recall the record, the issue with the one juror and the cell phone.  It was brought to my attention by the entirety of the staff, the bailiff, everyone in the room, and I was not seeing it initially and it was brought to my attention and kept watching and it kept occurring.  So I did have concerns, not only about inability to pay attention, but basically unwillingness to follow the basic rules and decorum of the courtroom that I had already previously and expressly

discussed with the entirety of the jury. And we have signs posted as to that issue. That was not a close call at all."

## 2. Analysis

The prosecutor's reason for striking Z.P. was that she was distracted. The prosecutor explained that she saw Z.P. on her phone as soon as the recess began and during court proceedings the day before, she just "appeared [distracted]," and something in Z.P.'s life was keeping her "from being present." This is a presumptively invalid reason. (§ 231.7, subd. (g)(1)(A) [prospective juror was inattentive].) Nonetheless, for the reasons set forth *post*, the presumption was properly rebutted in the trial court under the statutory two-step inquiry. (*Id.*, subd. (g)(2).)

First, substantial evidence supports the court's confirmation of Z.P.'s inattentive or distracted behavior. (*Ortiz, supra*, 96 Cal.App.5th at p. 801 [reviewing express confirmation finding for substantial evidence]; § 231.7, subd. (j).) The trial court confirmed that it had observed Z.P. on her phone during proceedings the day the prosecutor exercised the peremptory challenge. The record also shows that court staff brought Z.P.'s cell phone use to the court's attention. And, considering the behavior at issue is nonverbal, there is nothing in the record that calls into question the trial court's finding confirming that Z.P. acted in such manner.[3] (See *Ortiz*, at p. 802, citing *People v. Reynoso* (2003) 31 Cal.4th 903, 926.)

---

[3] Defendant belatedly argues in his reply brief that the confirmation requirement was not met because the court did not observe Z.P. on her phone the day before the challenge. Arguments made for the first time in a reply brief are forfeited (*Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538, 548), but, in any event, this argument lacks merit. The prosecutor stated broadly that Z.P. "appears to just be [distracted]." This reason encompassed Z.P.'s behavior on the day of the peremptory challenge, and the court confirmed that behavior.

Second, on de novo review, we find the explanation requirement satisfied. (*Ortiz*, *supra*, 96 Cal.App.5th at pp. 803–804 [reviewing explanation requirement de novo where court made no express findings].) Under the statutory scheme, "counsel's proffer of any explanation regarding 'why the asserted demeanor, behavior, or manner . . . matters to the case to be tried' fulfills the explanation requirement of section 231.7, subdivision (g)(2)." (*Id.* at p. 804; see also *ibid.* ["[N]either the trial court nor the reviewing court must examine whether the prosecutor's explanation is supported by substantial evidence when deciding whether the explanation requirement has been fulfilled. We only determine whether any explanation was in fact provided by the prosecutor"].) Here, the record refutes defendant's claim that the prosecutor "never explained" why Z.P.'s behavior "mattered to the case." Immediately after the prosecutor stated her reason for exercising the peremptory challenge, she explained that, based on Z.P.'s observed distracted behavior during the jury selection process, "I just felt like she couldn't — she couldn't pay attention in the trial." This explanation, which reasonably extrapolated from Z.P.'s distracted behavior during voir dire the prospect of Z.P. failing to pay attention during the upcoming trial, sufficiently explained how the juror's observed behavior during jury selection "matter[ed] to" the imminent trial of the case.[4] (§ 231.7, subd. (g)(2).)

---

[4] We acknowledge that the prosecutor could have explained more extensively the basis for her concern regarding Z.P. For example, in addition to saying, "I just felt like she couldn't — she couldn't pay attention in the trial," the prosecutor could have added something such as, " . . . and the case I plan to present will require careful assessment of video evidence." But as in *Ortiz*, we find that the prosecutor here fulfilled the explanation requirement of section 231.7, subdivision (g)(2) notwithstanding that "the prosecutor did not state her explanation very articulately." (*Ortiz, supra,* 96 Cal.App.5th at p. 805.)

11

Having determined that the presumption of invalidity was properly rebutted, we must next determine de novo whether, in light of the totality of the circumstances, there is a substantial likelihood that an objectively reasonable person would view Z.P.'s cognizable group membership as a factor in the use of the peremptory challenge. (§ 231.7, subds. (d)(1), (j); *Ortiz, supra*, 96 Cal.App.5th at pp. 805–807 [reviewing de novo trial court's § 231.7, subd. (d)(1) conclusion]; *People v. Jimenez* (2024) 99 Cal.App.5th 534, 546 (*Jimenez*) [same].)

Here, defendant and Z.P. were Hispanic, but this is balanced out by the fact that some prosecution witnesses also had Spanish surnames. (§ 231.7, subd. (d)(3)(A)(i), (iii); *Jimenez, supra*, 99 Cal.App.5th at p. 545.) The prosecutor did not ask Z.P. about her phone use directly. (§ 231.7, subd. (d)(3)(C).) However, the prosecutor did question Z.P. about whether she understood that she would need to "sit with us for a while" and "listen to and evaluate all the evidence" presented, and these questions bore on Z.P.'s ability to focus and pay attention to the court proceedings. We find these factors neutral.

Next, the Legislature has recognized that inattentiveness has been historically associated with improper discrimination (§ 231.7, subds. (d)(3)(E), (g)(1)(A)), but, as set forth *ante*, the presumption of invalidity was rebutted here. (§ 231.7, subd. (g)(2).) The record reflects that many people saw Z.P. using her phone during court proceedings despite signs prohibiting such use, and a juror's failure to pay attention logically affects his or her ability to be fair. (*Id*., subd. (d)(3)(F).) These factors thus do not suggest a substantial likelihood that an objectively reasonable person would view race or ethnicity as a factor in the use of the peremptory challenge.

12

The prosecution's use of peremptory challenges (§ 231.7, subd. (d)(3)(G)) presents another neutral factor on this record. Apart from Z.P., the prosecutor challenged J.G., who identified himself as Mexican, but the prosecutor also challenged a prospective juror who did not have a Spanish surname. And defendant does not argue, nor is there is evidence showing, that the prosecution exercised peremptory challenges disproportionately against a given race or ethnicity in the past.

Defendant argues that the prosecutor excused Z.P. because she told the bailiff she was concerned about an afternoon appointment that she had on the day the peremptory challenge was exercised, and this was a pretext for discrimination because juror No. 5 was not challenged after disclosing that he had a doctor's appointment the following day. (See § 231.7, subd. (d)(3)(D) [court may consider whether other prospective jurors, who are not members of the same cognizable group as challenged prospective juror, provided similar answers but were not challenged].) However, the prosecutor excused Z.P. because she behaved in a distracted manner in court, not simply because she disclosed that she had a scheduling conflict, and there is no evidence in the record that juror No. 5 was inattentive in court.

Furthermore, the trial court here found, and defendant does not dispute, that the jury included six Hispanic jurors. Defendant points out that the fact that other Hispanic jurors served on the jury does not sanitize the use of a discriminatory peremptory challenge, and we agree. But we are not dealing with a finding that a peremptory challenge was exercised in a discriminatory manner. Instead, we are assessing whether there is a substantial likelihood that an objectively reasonable person would view race or ethnicity as a factor in the prosecutor's use of the peremptory challenge. Courts have recognized that acceptance of other jurors of the same cognizable

13

group as a challenged prospective juror lessens any inference of discrimination that might otherwise be implied from the prosecutor's pattern of strikes. (*People v. Reed* (2018) 4 Cal.5th 989, 1000–1001; *People v. Collins* (2021) 60 Cal.App.5th 540, 554; see also *Jimenez, supra,* 99 Cal.App.5th at p. 547 [finding fact that prosecutor did not seek to remove all Latino jurors relevant in § 231.7, subd. (d)(1) analysis].) And defendant does not argue, nor does it appear, that race or ethnicity bore on the facts to be tried in this case. (§ 231.7, subd. (d)(3)(B).)

Evaluating the reason stated by the prosecutor against the totality of the circumstances, we conclude that the record before us does not show more than a mere possibility that race or ethnicity was a factor in the prosecutor's peremptory challenge of Z.P. (§ 231.7, subds. (d)(1), (d)(2)(B), (j).)

Defendant's final argument with respect to the prosecutor's challenge of Z.P. is that reversal is required because, in addition to evaluating the reason stated by the prosecutor, the trial court also relied on a speculative reason not stated by the prosecutor — that Z.P. displayed contempt for court norms that interfered with her social media needs. Section 237.1, subdivision (d)(1) provides that the trial court "shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge." We thus face a situation where we have determined that defendant's objection to the use of a peremptory challenge based on the only reason stated by the prosecutor was properly denied, yet the trial court also appears to have relied on an additional reason not stated by the challenger. We have not found a case involving analogous facts. Based on the language of the statute, however, we conclude that section 231.7 does not provide for reversal in these circumstances.

14

Section 231.7 prohibits the use of a peremptory challenge to remove a prospective juror on the basis of membership or perceived membership in a cognizable group (§ 231.7, subd. (a)), and a party may object to "the improper use of a peremptory challenge under [section 231.7] subdivision (a)." (*Id.*, subd. (b).) We review the denial of the objection de novo, and we determine whether an objection was properly denied by considering the "reasons actually given under subdivision (c)" by the prosecutor. (*Id.*, subd. (j).) On de novo review, " 'Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine whether that decision is correct.' " (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [discussing de novo review in appeal addressing a summary judgment order].)

Here, defendant points out that the prosecutor did not state that she was challenging Z.P. because she displayed contempt for court norms. However, even accepting that the trial court added this as a reason supporting the challenge, we have determined that the trial court's assessment of the prosecutor's actual reason was correct. Here, there is not a substantial likelihood that an objectively reasonable person would view race or ethnicity as a factor in the prosecutor's use of the peremptory challenge. (§ 231.7, subds. (d)(1), (j).) Stated otherwise, our de novo review confirms that the prosecutor did not engage in the conduct proscribed by section 231.7, subdivision (a). As such, defendant's objection that the prosecution used a peremptory challenge to remove Z.P. on the basis of race or ethnicity was properly denied.

In reaching this conclusion, we acknowledge the recent decision of *People v. Barnes* (2024) 107 Cal.App.5th 560, which defendant suggests is relevant (Cal. Rules of Court, rule 8.254) because *Barnes* reversed a judgment

15

after finding the prosecutor's peremptory strike was racially discriminatory and the trial court violated section 231.7, subdivision (d)(1) by not considering the reason actually given by the prosecutor for the challenge. *Barnes* is distinguishable. The trial court there considered its own reasons for striking the juror, while at the same time finding that the prosecutor's stated reasons did not support the challenge. (*Barnes,* at pp. 567–568.) The appellate court determined that two of the prosecutor's reasons were presumptively invalid under section 231.7, subdivision (g)(1)(B). (*Barnes*, at pp. 581–582.) Because the trial court had not confirmed the behavior under section 231.7, subdivision (g)(2), these actual reasons were conclusively invalid and violative of section 231.7, subdivision (a). (*Barnes*, at p. 582; *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 891 [where § 231.7, subd. (g)(2) is not satisfied, court must treat *as conclusive* statutory presumption that reason identified was actually based on membership or perceived membership in cognizable group and was prohibited by subd. (a)].) In contrast, here we have determined that the prosecutor's challenge was not prohibited by section 231.7, subdivision (a), so *Barnes* does not support a reversal in this case.

### B. *The Challenge to Prospective Juror J.G.*

#### 1. Additional Background

##### a. *J.G.'s Juror Questionnaire*

J.G. identified himself as Mexican on his juror questionnaire, and he disclosed that he had previously served as a juror. He answered affirmatively to the question, "Is there anything about your prior jury service that would cause you to be unfair in this case?" He explained, "The law didn't fit what really happened."

16

The questionnaire also addressed the topic of evaluation of witness credibility. One question stated, "The law requires jurors to evaluate the testimony of each witness by the same standard without bias or prejudice. Would you have any difficulty applying these same standards to judge the credibility of every witness regardless of who that witness is?" J.G. checked the "Yes" box. When asked if he would "automatically believe the testimony of a law enforcement officer, simply because he/she is a law enforcement officer," J.G. responded, "No," and, "Because of my last jury." When asked, "Would you favor the side that had law enforcement officers as witnesses," J.G. checked the "Yes" and "No" boxes and wrote, "Last jury."

### b. *Voir Dire of J.G.*

During voir dire, J.G. told defense counsel that he would be able to evaluate expert testimony about false confessions and watch a video of an interrogation and decide whether there was a false confession. Defense counsel questioned J.G. about a question mark response he had provided to a question about whether defendant was probably guilty of something because he was arrested and charged with a crime, and J.G. explained that he did not have his glasses on when he filled out the questionnaire.

Defense counsel asked about the question to which J.G. had checked "yes" and "no" regarding favoring the side with law enforcement witnesses; J.G. stated he could follow an instruction that all witnesses had to be treated the same and he would not put more or less weight on testimony just because it came from a police officer.

The prosecutor began questioning J.G. about his prior jury service. "You talked about bad experience with jury duty. Do you want —." J.G. interrupted, "It wasn't a bad experience." He stated, "It was just the interrogation part," and later said, "The interrogation part with the

17

confession." He continued, "It was just a situation was a little odd and, like I said, they had two experts contradicting themselves in a way." The following exchange then took place:

> [Prosecutor]: You don't have to go into detail about it but —
> [J.G.]: That was just it.
> [Prosecutor]: Okay. Because you —
> [J.G.]: Everybody is — everybody is an expert, both sides.
> [Prosecutor]: Right. Okay.
> [J.G.]: You have to —
> [Prosecutor]: But my question is that — and you have several times said, 'Because of my last jury,' 'last jury,' that —
> [J.G.]: It was a child abuse.
> [Prosecutor]: Okay.
> [J.G.]: It was kinda 50/50 where you can feel for the parent but the law is the law.
> [Prosecutor]: Right.
> [J.G.]: And not to —
> [Prosecutor]: Well, obviously, that's another type of case where emotions get involved.
> [J.G.]: Right.
> [Prosecutor]: Right. And you have to set aside that emotion.
> [J.G.]: And I — I did. I did. And two of us held out for a while until the law is the law and we had to decide with the law.
> [Prosecutor]: Right. And then you feel comfortable doing that —
> [J.G.]: Oh, yeah.
> [Prosecutor]: — in this case as well?
> [J.G.]: Definitely.
> [Prosecutor]: There is nothing about that experience you are going to bring into this case?
> [J.G.]: Oh, no, no, no. Totally different.
> [Prosecutor]: Because you can't decide this case based off sympathy for either side —
> [J.G.]: No. Right.
> [Prosecutor]: — for my victim, his family, or [defendant] and his family.
> [J.G.]: Right.

The prosecutor moved on to ask J.G. about his questionnaire response where he wrote his first reaction to hearing about the charge was that it was

18

self-defense. J.G. stated, "I didn't — like I said, my — most likely didn't read the question correctly because I didn't have my glasses on. I thought I meant depending on if it was self-defense or not." The prosecutor asked if J.G. understood that he had to "evaluate, listen to the evidence in this case?" He responded, "Exactly." The prosecutor inquired whether J.G. would still have self-defense on his mind if there was no instruction on self-defense, and he responded, "No. No. Because by that time I will know all evidence."

The prosecutor returned to J.G.'s questionnaire response in which he said he would not be able to keep an open mind and listen to an expert in false testimony. J.G. stated, "Well, that goes back to where both sides had the expert on it." He continued, "And it was like, okay, well, you have to pick and watch the video of it. And actually see what happened to sway you one way or the other." The prosecutor noted that his prior jury service had to stay outside the door, and J.G. responded, "Oh, definitely. This is [a] totally different case." After a few more questions, the prosecutor moved on to question a different prospective juror.

### c. The Peremptory Challenge and Court Ruling

After the 12-member jury was sworn, the court indicated that it wanted three alternate jurors and gave both parties three peremptory challenges. Defense counsel declined to challenge J.G., and the following exchange occurred:

"[Prosecutor]: People would ask the Court to thank and excuse [J.G.]

"[The court]: All right. [J.G.], thank you. You'll be excused. By the way —

"[Defense counsel]: I would also have an objection [as to] this juror before he's excused.

19

"[The court]: All right. Same thing. We can discuss it on the record. I'm going to go ahead and let him go."

When the court addressed defendant's objection at a later break in the proceedings, the prosecutor explained, "Although [J.G.] says that he is [of] Mexican race and ethnic background, I would like to note for the record that he wouldn't let me complete my sentences. He did interrupt me a lot. He appeared to try to be justifying the answers in his questions that he couldn't believe law enforcement; that he couldn't be a witness; he couldn't be fair and impartial because of what happened in his previous trial. I think when you look at his questionnaire, there's a number of answers in here that would justify a peremptory challenge." She continued, "So, again, he says — I'll just note it for the record: [¶] 'Specifically, is there anything about your prior jury service that would cause you to be unfair in this case?' [¶] He answered: 'Yes. The law didn't fit with what really happened.' [¶] Um, another question: 'Would you automatically believe the testimony of law enforcement officers simply because he or she is a law enforcement?' [¶] Although he says no, he says: 'Because of my last jury.' [¶] 'Would you favor the side [that] had law enforcement officers as witness?' [¶] He said: 'Yes and no.' And then said because of his last jury." She concluded, "I just don't think that based off his prior experience as a juror that he would be able to be fair and impartial to either side in this case."

The court turned to defense counsel, who argued, "Well, I would just note that under subdivision (e) of 231.7, a juror now expressing, you know, distrust or some sort of negative experience with law enforcement is another one of the presumptively invalid reasons. And I think when he was explaining how he wrote — what was written on his questionnaire, he mentioned, even to me, that he didn't have glasses at the time. So might

20

have had confusion. [¶] So I think that — again, based on the totality of the circumstances, I don't think that the peremptory challenge is — that an objectively reasonable person would view race as a factor in exercise of the strike."

The prosecutor replied, "Can I just make it clear?  It had nothing to do with his views on law enforcement.  It was a race-neutral reason based off his prior experience in jury duty, which is case law."

The court ruled, "Well, let me do this:  It's kinda interesting.  As we go through this and I see the process, I — you know, the problem with the questionnaire before you discuss things with jurors is they just start spouting off opinions, and then you explain [to] them the way the law works, okay, now I get it.  And then [they] say something that is inconsistent with the questionnaire they just said.  And that seemed to be almost chronic in this trial for some of these answers.

"Now, having said that, he — I thought he — the inconsistencies between what he said in that questionnaire and what he said in court were many, were huge, and the 'I didn't read the question' didn't help me at all either.  That — that as an explanation that did not give me any confidence anyway. [¶] So what was going on with him, I am not sure.  I didn't even understand the answer about how being on this jury before somehow impacted that.  I'm not sure — and maybe I guess someone reading it might see a more linear process in his analysis.  I could not figure out what he was talking about. [¶] But I do think it's not a race-based reason to have concern about someone who would present that stuff with such substantial inconsistencies.  Even before he gets to the substance of it of what he's saying, it was — it was sort of a strange thing. [¶] So I don't find that it was race-based or that that challenge was inappropriate."

## 2. Analysis

Defendant contends that the prosecution's reasons for dismissing J.G. were presumptively invalid under subdivisions (g)(1)(B) and (C), and (e)(1) of section 231.7. Defendant contends that the prosecutor challenged J.G. because he interrupted and would not allow her to finish her sentences; he gave confusing answers to questions; and he indicated in his juror questionnaire responses that his prior service as a juror would influence his decision-making. Defendant also contends that the totality of the circumstances shows that race or ethnicity was a factor in the prosecutor's use of the peremptory challenge.

Turning first to J.G.'s interruptions, defendant states that this is a presumptively invalid demeanor-based reason under section 231.7, subdivision (g)(1)(B), and the presumption was never rebutted under subdivision (g)(2). The People argue that the prosecutor's comments regarding J.G.'s interruptions did not constitute an independent justification for the peremptory challenge, and, instead, the prosecutor made these observations to support her explanation for why J.G.'s voir dire responses did not alleviate her concern about his juror questionnaire responses. The People also argue that defendant forfeited this claim by failing to argue below that the prosecutor struck J.G. for a presumptively invalid reason under section 231.7, subdivision (g)(1)(B). We need not decide whether defendant's interruptions were a separate reason for the prosecutor's challenge because the People's forfeiture argument has force here.

"In general, the failure to articulate an objection to a peremptory challenge forfeits the issue on appeal." (*Jaime*, *supra*, 91 Cal.App.5th at p. 946 [stating general rule but finding an objection under section 231.7 would have been futile where court insisted on reviewing issue under

*Batson/Wheeler* framework]; see also *People v. Mills* (2010) 48 Cal.4th 158, 170 ["A party must make a timely and specific objection to the manner in which a trial court conducts jury selection or the matter is forfeited for appeal"].) "[T]he purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Jaime,* at p. 946.)

Below, defendant objected to the prosecutor's challenge of J.G. under section 231.7, but he never argued that the prosecutor had stated a presumptively invalid reason under section 231.7, subdivision (g)(1)(B). Defendant made a section 231.7, subdivision (g)(1) argument for Z.P., but, for J.G., he argued the challenge was presumptively invalid under section 231.7, subdivision (e)(1) and the totality of the circumstances (*id.*, subd. (d)(1)). Defendant also did not object that the court failed to engage in the two-step analysis under section 231.7, subdivision (g)(2). Defendant does not contend that it would have been futile to make his argument under section 231.7, subdivision (g)(1)(B). Instead, he claims that forfeiture should not apply because his reference to the totality of the circumstances was broad enough to encompass the argument he now makes, and the trial court ruled on and must have understood his objection. However, the record does not show that the court understood that defendant was arguing that the prosecutor had given a presumptively invalid demeanor-based reason for her challenge, and the court did not undertake a section 231.7, subdivision (g)(2) analysis. Had defendant raised section 231.7, subdivision (g)(1)(B), the parties' current debate about whether J.G.'s interruptions provided an independent reason for the prosecutor's challenge could have been settled, and, if needed, the trial court could have engaged in the section 231.7, subdivision (g)(2) analysis. The errors defendant asserts on appeal could have been avoided or corrected,

so the rationale for the forfeiture rule's application is evident. (See *Jaime, supra*, 91 Cal.App.5th at p. 946 [forfeiture rule encourages parties to bring errors to trial court's attention so errors may be corrected].)

We reach a similar conclusion with respect to defendant's claim that the prosecutor challenged J.G. because he gave confusing answers, which the People contend was also forfeited. Defendant argues for the first time on appeal that the prosecutor challenged J.G. for the presumptively invalid reason that he gave confusing answers (§ 231.7, subd. (g)(1)(C)), and that reason became conclusively invalid because the prosecutor did not explain why the confused answers mattered to the case. We note that defendant appears to infer this reason from the record because the prosecutor never said this was a reason for her challenge. Had defendant argued below that prosecutor challenged J.G. for this presumptively invalid reason, the prosecutor could have clarified her position and defendant's assertion of error with respect to the explanation requirement could have been avoided or corrected. Again, this new claim of error illustrates the appropriate role of the forfeiture rule.

Both parties agree that the prosecutor challenged J.G. because of answers he gave in his juror questionnaire about his prior jury service, and there is no dispute regarding whether defendant raised this argument below.[5] The parties debate whether J.G.'s prior experience as a juror falls within the presumptively invalid category of "[e]xpressing a distrust of or having a

---

[5] Although defendant briefly argues that the prosecutor initially said she challenged J.G. because he said he could not be a witness or believe law enforcement and these reasons were unsupported, the record is clear that the prosecutor's actual reason for challenging J.G. was because of his questionnaire responses regarding his prior jury service that the prosecutor read into the record.

negative experience with law enforcement or the criminal legal system." (§ 231.7, subd. (e)(1).) We will assume this is a presumptively invalid reason under section 231.7, subdivision (e)(1) because we find that the record supports a conclusion that the presumption of invalidity was rebutted.

There was clear and convincing evidence that an objectively reasonable person would find that the prosecutor's reason was unrelated to J.G.'s race or ethnicity and bore on J.G's ability to be fair and impartial. (§ 231.7, subds. (e), (f).) J.G. wrote in his questionnaire that there was something about his prior jury service that would cause him to be unfair in this case — in particular that "[t]he law didn't fit what really happened." During voir dire, J.G. discussed holding out with another juror in the prior case for "a while," and feeling for the defendant there. He said that he would not bring his prior jury experience into this case in response to the prosecutor's questioning on the topic, but he nonetheless wrote that he could not be fair because of his prior jury service. He also answered "yes" and "no" to the question about whether he would favor a side with law enforcement witnesses and explained this was also because of his "last jury." The prosecutor told the court that, because of J.G.'s answers on the questionnaire, she did not think that he could be fair or impartial to either side. Other courts have recognized that the statutory presumption was overcome by prospective jurors' equivocal answers about their ability to be fair or impartial (see *Jimenez, supra*, 99 Cal.App.5th at p. 544; *People v. Gonzalez* (2024) 104 Cal.App.5th 1, 17–18), and the same conclusion is appropriate here.

Having determined that the presumption of invalidity was properly rebutted, section 237.1 requires that we undertake a de novo assessment of whether there is a substantial likelihood that an objectively reasonable

person would view race as a factor in the use of the peremptory challenge considering the reason given and the totality of the circumstances. (§ 231.7, subds. (d)(1), (j).) We have determined that clear and convincing evidence supports the conclusion that an objectively reasonable person would find that it is highly probable that the reason given for the prosecutor's peremptory challenge of J.G. was unrelated to his membership in a cognizable group and was instead specific to J.G. and bore on his ability to be fair and impartial in the case. There accordingly is no substantial likelihood that an objectively reasonable person would view race as a factor in the prosecutor's peremptory challenge of J.G. In addition, the prosecutor questioned J.G. directly about his prior jury service (§ 231.7, subd. (d)(3)(C), and we find the objection was properly denied for many of the same reasons we rejected defendant's objection to the prosecutor's challenge of Z.P. (see *id.*, subd. (d)(3)(A)(i), (iii), (B), (E)–(G).)

Defendant next argues the trial court erred under section 231.7, subdivision (d)(1) because the court relied on a reason not stated by the prosecutor — that defendant's juror questionnaire and voir dire responses were inconsistent — but the record does not support this claim. After the prosecutor clarified that she struck J.G. for a "race-neutral reason based off his prior experience in jury duty," defense counsel argued that J.G. had explained his questionnaire responses and he was not wearing glasses when he wrote them. Against this background, the court began by observing that questionnaires can be problematic because jurors do not fully understand the questions until voir dire, at which point they understand what is being asked and often change their answers. The court nonetheless noted that J.G.'s voir dire responses, including that he didn't read the questionnaire correctly, were so inconsistent that they did not give the court confidence. The court then

26

stated, "But I do think it's not a race-based reason to have concern about someone who would present that stuff with such substantial inconsistencies." Although the court's oral comments could have been clearer, when viewed in context, they show the court rejected defendant's argument and could see why J.G.'s voir dire responses did not dispel the prosecutor's concern with his questionnaire responses. We disagree with defendant's assertion that the court improperly provided a separate reason for the prosecutor's strike.

### C. *Additional Alleged Statutory Errors*

Finally, defendant contends that the trial court erred by excusing Z.P. and J.G. before hearing the prosecutor's reasons for the peremptory challenges and by drawing its own conclusions about the validity of the challenges. Following a sidebar discussion with the parties after defendant objected to the peremptory challenge of Z.P., the court excused Z.P. and then later similarly excused J.G. before hearing argument. Section 237.1 requires the trial court to evaluate the challenging party's actual reasons for the peremptory challenge and forbids speculation about potential permissible reasons (*id.*, subd. (d)(1)), and one discretionary remedy for the improper use of a peremptory challenge is to seat the challenged juror (*id.*, subd. (h)(3)). Considering these statutory provisions, the trial court's actions were perplexing, although we do not know what was said during the unreported sidebar. Nonetheless, the statute directs us to review the ultimate denial of an objection made under its provisions de novo considering the actual reasons given by the challenging party. (§ 231.7, subd. (j).) We have done so and have determined there is no substantial likelihood that an objectively reasonable person would view race or ethnicity as a factor in the use of the peremptory challenges at issue. The objections were therefore correctly denied. (§ 231.7, subds. (d)(1), (j).)

27

## II. Claims of Error Related to the Jury Instructions

The trial court used the pattern instructions to instruct the jury on murder and first degree murder (CALCRIM Nos. 520, 521, 522), perfect self-defense (CALCRIM No. 505), imperfect self-defense (CALCRIM No. 571), and heat-of-passion manslaughter (CALCRIM No. 570).  Defendant did not request any modification to these jury instructions.

On appeal, defendant argues that because he was 22 at the time of the crime and the brains of young adults between the ages of 18 and 25 are not fully developed, his youth was relevant to his mental state of acting with conscious disregard for human life, to his belief in the need to use deadly force and the reasonableness of that belief, and to whether provocation caused him to react from passion rather than from judgment and the reasonableness of that belief.  Defendant accordingly contends that the trial court erred by failing to sua sponte instruct the jury that it should consider his youth in assessing murder and manslaughter, and, if not, his trial counsel provided ineffective assistance by failing to request such an instruction.  We disagree.

Even in the absence of a request, a trial court in a criminal case must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.  (*People v. Molano* (2019) 7 Cal.5th 620, 667.)  However, a trial court has "no sua sponte duty to advise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal."  (*People v. Lee* (2011) 51 Cal.4th 620, 638.)  A court has no sua sponte duty to instruct on doctrines of law that have not been well established.  (*Molano*, at pp. 668–669.)  " '[A] legal concept that has been

28

referred to only infrequently, and then with "inadequate elucidation," cannot be considered a general principle of law such that a trial court must include it within jury instructions in the absence of a request.' " (*Id*. at p. 668.) Even acceptance of a legal rule in one intermediate appellate decision does not impose a sua sponte duty to instruct on that rule. (*Id*. at p. 669.) Thus, in *Molano,* where our Supreme Court held for the first time that a good faith but unreasonable belief in consent negates the specific intent to commit rape, the high court also recognized that the trial court in that case did not have a sua sponte duty to give a jury instruction on this rule because the law was not well-established at the time of the defendant's trial. (*Id*. at pp. 667–669.)

Defendant's claim here fails at the "well-established" requirement: He does not show that, at the time of his April 2022 trial, there was a rule, let alone a well-established rule, recognizing that underdevelopment in the brains of young adults between the ages of 18 to 25 required a jury to consider the youth of a defendant in this age group when assessing whether he or she committed murder or voluntary manslaughter. Defendant relies on California cases from 2021 holding that a trial court should consider "youth" in assessing whether a defendant had the mental state required for a felony murder conviction in the Penal Code section 1172.6 context. However, these early 2021 cases involved defendants under the age of 18. (*People v. Jimenez* (2024) 103 Cal.App.5th 994, 1001–1003 [reviewing cases and noting seminal case relied on federal jurisprudence acknowledging scientific differences in brains of children but drawing line at 18].)

Defendant also cites case law starting in July 2022, again in the Penal Code section 1172.6 context, extending to defendants between the ages of 18 and 25 the rule that a defendant's youth should be considered in assessing whether he or she had the mental state required for felony murder. (*People v.*

29

*Jimenez*, *supra*, 103 Cal.App.5th at pp. 1002–1003 [summarizing cases].) Defendant also cites *People v. Pittman* (2023) 96 Cal.App.5th 400, 404, which held in a Penal Code section 1172.6 case that the trial court should have considered the defendant's age (21) when assessing whether the defendant could be convicted of implied malice murder. But this case law was decided after defendant's April 2022 trial.

Defendant also points out, correctly, that there were some statutory reforms to sentencing laws for young adult offenders under 26 starting in 2017 (see Pen. Code, §§ 1170, subd. (b)(6), 1016.7, 3051, subds. (a), (b), 4801, subd. (c)). However, despite the existence of these sentencing statutes, even the cases holding that the youth of a defendant between the ages of 18 to 25 bears on whether he or she acted with the mental state required for murder recognized that their holdings represented a change in prior law. (*People v. Jimenez*, *supra*, 103 Cal.App.5th at pp. 997, 1005–1006 [these cases provided "significant" and "material" changes]; *People v. Pittman*, *supra*, 96 Cal.App.5th at p. 417 [referring to this as a "still-developing area of the law"].) Indeed, these courts determined that remand was necessary so the trial courts could reconsider the petitions at issue because it was unlikely the trial courts could have known to consider a young adult's age to the extent the cases now required. (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1091–1093; *People v. Pittman*, at p. 417; *People v. Jimenez*, at p. 1000.) And defendant does not cite a single California authority recognizing the brain underdevelopment in young adults ages 18 to 25 and holding that their age consequently should be considered in assessing the mental components of self-defense or heat of passion voluntary manslaughter.

In sum, we cannot conclude that the trial court in defendant's April 2022 trial had a sua sponte duty to instruct that defendant's age at 22 bore

on whether he acted with malice, whether he acted in perfect or imperfect self-defense, or whether provocation obscured his reason to such an extent he reacted from passion rather than from judgment and the reasonableness of that belief.

We reject defendant's ineffective assistance of counsel claim for similar reasons. To succeed on this claim, defendant must prove: (1) trial counsel's performance was deficient in that it fell below an objective standard of reasonableness when measured by prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.) Given the state of the law at the time of defendant's trial, he does not bear his burden of proving his trial counsel's performance fell below an objective standard of reasonableness when measured by prevailing professional norms. (Cf. *People v. Jimenez*, *supra*, 103 Cal.App.5th at pp. 999, 1006 [observing defense counsel made passing reference to defendant's age of 19 in 2021 proceedings, but counsel "did not have a sufficient incentive to develop the issue or present additional evidence on it under the existing case law at the time, which was limited to juvenile defendants"].)

## III.  Correction of the Abstract of Judgment

The parties agree the abstract of judgment incorrectly reflects a sentence of 25 years to life on defendant's murder conviction and his "12022.5(b) PC" enhancement when it should reflect a sentence of 15 years to life for murder, plus an additional 10 years for a Penal Code section 12022.53, subdivision (b) enhancement. We agree with the parties and will order that the abstract of judgment be corrected. (*People v. Clark* (2021) 67 Cal.App.5th 248, 260–261 [appellate court may order correction of abstract of judgment].)

The court sentenced defendant to 15 years to life on the murder conviction. The jury found true a Penal Code section 12022.53, subdivision (d) enhancement, and defendant requested that the court strike or reduce it (Pen. Code, § 1385). The court commented at the sentencing hearing that if it struck the enhancement, it could impose other subsections of Penal Code section 12022.53, and the court said it made more sense to "zero in" on those subsections "rather than looking at the other statute" (referring to "1202.5 [*sic*]"). Defense counsel agreed that the court could impose an enhancement under the other subdivisions of Penal Code section 12022.53. The court then said, "So what I'm going to do is exercise my discretion under 1385 and I'm going to strike the enhancement under 1202.53(d) [*sic*]. What I'm going to do is instead sentence him to the additional 10 years under 12,022.5(b) [*sic*]." The People point out that Penal Code section 12022.5, subdivision (b) is an inapplicable assault weapon enhancement. Taken as a whole, the record shows that the court intended a Penal Code section 12022.53, subdivision (b) enhancement.

The abstract of judgment must be corrected to reflect a sentence of 15 years to life for murder (count 1), plus a 10-year term for an enhancement under Penal Code section 12022.53, subdivision (b).

## DISPOSITION

The trial court is instructed to correct the abstract of judgment to reflect a sentence of 15 years to life for murder (count 1), plus a 10-year term for an enhancement under Penal Code section 12022.53, subdivision (b). The corrected abstract shall be forwarded to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

BROWN, P. J.

WE CONCUR:

STREETER, J.
GOLDMAN, J.                                        *People v. Rosales* (A167850)

33